COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-382-CR

WILLIAM FULLER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In this appeal, Appellant William Fuller challenges the trial court’s denial of his motion to suppress.
(footnote: 2)  In a single point, Fuller contends that the trial court erred by denying his motion to suppress and admitting the statement he made to police officers that his fingerprints would be found on a plastic baggie of methamphetamines; Fuller claims this statement was made during a custodial interrogation and before police officers had read him his 
Miranda
 rights.  We will affirm. 

II. Factual and Procedural History

Officer Jeremy Chevallier and Sergeant Jack Adams of the Carrollton Police Department were dispatched to 2805 Elk Grove Road in Carrollton, Texas, in response to a report of a suspicious person in a maroon Ford Taurus.  After locating the Taurus at the address, the officers looked inside the car and noticed a marijuana pipe in the passenger seat; they then walked 
to the front door of the residence in an attempt to make contact with someone.  Fuller answered the front door.  Officer Chevallier asked Fuller if the marijuana pipe in the passenger seat of the Taurus was his, and Fuller denied ownership of the pipe.  Fuller did, however, admit to smoking marijuana and said that there was marijuana in the house.  Fuller led the officers to the garage and retrieved a bag of marijuana from an area in the garage where a desk was located.
(footnote: 3)  

Officer Chevallier took possession of the marijuana, noticed pipes often used to smoke methamphetamines on the desk
, and asked whether there were any other drugs in the garage. 
 Fuller said that there were no other drugs and consented to Officer Chevallier’s request to search the garage.  
While searching 
the desk area from which Fuller had produced the marijuana, Officer Chevallier discovered a bag containing what he thought were methamphetamines.

After Fuller twice denied ownership of the bag of methamphetamines, 
he admitted that his fingerprints would be on the bag.  
Fuller contends that Officer Chevallier
 was holding up both the bag of marijuana and the bag of methamphetamines, and that his statement regarded the bag of marijuana. 
 Fuller then led Sergeant Adams to a bedroom where Fuller produced more marijuana.  
Officer Chevallier arrested Fuller for possession of a controlled substance and the grand jury subsequently indicted Fuller for intentionally or knowingly possessing a controlled substance, namely methamphetamines.  

 Fuller filed a pretrial motion challenging the admissibility of his statement that his fingerprints would be on the bag of methamphetamines.  The trial court held a hearing on the issue.  Although the trial court did not make written findings of fact, at the end of the hearing the trial court stated on the record that it found that the officers neither told Fuller that he could
 leave nor told him he could not leave, that Fuller had the ability
 to move about the house, and that a reasonable person in Fuller’s position could not have believed his freedom was restrained to the degree associated with an arrest. The trial court consequently denied the motion.  

The case proceeded to trial, and after hearing all of the evidence a jury found Fuller guilty 
and assessed Fuller’s punishment at two years in a state jail facility and a fine of 750 dollars.  The trial court suspended Fuller’s sentence and placed him on community supervision for five years.  This appeal followed. 

III.  Motion to Suppress

A.  Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  

The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact, even if the trial court’s determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Montanez v. State
, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); 
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.  Stated another way, when reviewing the trial court’s ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court’s ruling.  
State v. Kelly
, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

 When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court’s ruling, supports those fact findings.  
Id. 
at 818-19.  We then review the trial court’s legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.  
Id
. at 819.
  

B. When Statements Made in Custody are Inadmissible

The Supreme Court has established guidelines for law enforcement agencies to follow during custodial interrogations. 
See
 
Dickerson v. United States
, 530 U.S. 428, 439-40, 120 S. Ct. 2326, 2333-34 (2000) (citing 
Miranda v. Arizona
, 384 U.S. 436, 441-42, 86 S. Ct. 1602, 1611 (1966)).  
These guidelines establish that police must provide the suspect with the constitutionally required 
Miranda
 warnings in order for any statements made by the suspect during the custodial interrogation to be admissible. 
See
 
Miranda
,
 
384 U.S. at 444, 86 S. Ct. at 1612 
. 
The Texas Code of Criminal Procedure has codified these guidelines by mandating that no oral statement made by the accused during a custodial interrogation may be admissible unless the accused has been informed of his 
Miranda
 rights and has waived these rights.  
See
 
Tex. Code Crim. Proc. Ann. 
art. 38.22, § 3(a)(2) (Vernon 2005). 

A person is in “custody” if a reasonable person under the circumstances would believe that his freedom of movement was restrained to the degree associated with a formal arrest.  
Dowthitt v. State
, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing 
Stansbury v. California
, 511 U.S. 318, 320–24, 114 S. Ct. 1526, 1528-30 (1994)).  The court of criminal appeals has outlined four general situations constituting custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.  
Dowthitt
, 931 S.W.2d at 255
 (citing  
Shiflet v. State
, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985)). 

 Under the fourth situation, at issue here, the officer’s knowledge of probable cause must be manifested to the suspect. 
 Id. 
 Manifestation occurs “if information substantiating probable cause is related by the officers to the suspect 
or
 by the suspect to the officers.” 
Id.
 (emphasis added).  Probable cause may be manifested when a suspect admits committing a crime.  
See id. 
at 254-57; 
see also Ruth v. State
, 645 S.W.2d 432, 436 (Tex. Crim. App. 1979) (suspect’s admission of shooting the victim immediately focused investigation on him and all subsequent interrogation was custodial); 
Garcia v. State
, 106 S.W.3d 854, 858 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d) (recognizing that in 
Dowthitt
 probable cause was manifested by a suspect’s admission of presence at the scene of the crime)
.  However, the manifestation of probable cause does not automatically establish custody; custody attaches if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest.  
Dowthitt
, 931 S.W.2d at 255; 
see Espinoza v. State
, 185 S.W.3d 1, 4 (Tex. App.—San Antonio 2005, no pet.).  
 

C.  Custody of Fuller

Fuller’s situation falls under the fourth scenario presented by 
Dowthitt
. 
See
 931 S.W.3d at 25.
  The officers had probable cause to arrest Fuller for possession of marijuana, and neither of the officers told Fuller he was free to leave.  
See Miller v. State
 196 S.W.3d 256, 265 (Tex. App.—Fort Worth 2006, pet. ref’d).  Although the officers never specifically told Fuller that probable cause existed, Fuller’s admission of ownership of the marijuana did constitute manifestation of probable cause.  
See Espinoza
, 185 S.W.3d at 4.  

But, this manifestation of probable cause alone does not establish “custody.”  
Id.
  The question is whether this manifestation of probable cause, when combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with arrest.  
See Dowthitt
, 931 S.W.3d at 254.

In reviewing the facts on this issue, we are mindful that we must view the evidence in the light most favorable to the trial court’s findings, and 
here the trial court made findings by dictating them into the record at the conclusion of the hearing.  
See State v. Cullen
, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (authorizing same).
  Specifically, the trial court found:

After looking at Bradley versus State and Shiftlet versus State, the test regarding whether or not the consensual detention becomes custody when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave, it states that the officer’s knowledge of probable cause must be manifested to the suspect.  Further, that probable cause is a factor and does not automatically establish custody.  Custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he or she is under restraint to the degree associated with an arrest.  A person is considered in custody only if a reasonable person would believe that his or her freedom of movement was restrained to the degree associated with a formal arrest and the subjective intent of the law enforcement officials to arrest is not relevant unless that intent is communicated or otherwise manifested to the suspect.

Based on the facts in this case, I do not believe that the officer told the defendant he was free to leave, but I also do not believe that he told the officer - - that the officer told him he could not leave.  And based on all the movements throughout the home that the defendant made, I do not believe a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest.

So, therefore, I’m going to deny the motion to suppress and allow the admission into evidence.

Officer Chevallier testified at the suppression hearing that his interaction with Fuller was “just conversation.”  He said Fuller was walking around his house, cooperating with police.  He testified that prior to asking Fuller the questions about the methamphetamines neither he nor his partner had handcuffed Fuller, had displayed their weapons, or had made any show of force at all.  Officer Chevallier described the entire encounter as “very low-key” and explained, “we didn’t make him sit down or anything.”  He described Fuller as walking freely about the house.  Officer Chevallier testified that only about five to ten minutes elapsed from when Fuller showed them the marijuana in the desk until Officer Chevallier asked Fuller the question about his fingerprints.  

Fuller’s testimony was consistent with Officer Chevallier’s testimony except that Fuller claimed when Officer Chevallier held up the bag of methamphetamines he was also holding up the bag of marijuana; Fuller claimed his statement that his fingerprints could be found on the bag was directed to the bag of marijuana, not the bag of methamphetamines.

After reviewing the evidence presented concerning the suppression issue in the light most favorable to the trial court’s ruling, the evidence supports the trial court’s findings.  
Accord
 
Kelly
, 204 S.W.3d at 818-19.  And the trial court’s legal ruling is compelled by its explicit and implicit fact findings that are supported by the record: that Fuller was freely walking about the house, that the officers did not engage in any show of force, and that the duration of the questioning after probable cause manifested was five to ten minutes.  
See id
. at 819.  

The record and the trial court’s explicit findings compel the trial court’s conclusion that 
despite the manifestation of probable cause that occurred when Fuller admitted ownership of the baggie of marijuana, the combined circumstances would not have led a reasonable person to believe that he was under restraint to the degree associated with arrest.  
Compare Dowthitt
, 931 S.W.2d at 252-54 (holding that probable cause gave rise to custody when the defendant made an incriminating statement after an hours-long interrogation session during which he experienced a substantial period without food, his complaints of exhaustion and requests to see his wife were ignored, and he was accompanied by authorities on restroom breaks), 
and Ramirez v. State
, 105 S.W.3d 730, 740 (Tex. App.—Austin 2003, no pet.) (holding that probable cause gave rise to custody when the police officer arrived at the defendant’s house in response to a disturbance call, and, after a brief investigation, handcuffed the defendant’s hands behind his back, patted him down, and said “you are being detained”), 
with Espinoza
, 185 S.W.3d at 4 (holding defendant was not in custody when she went to police station and waited for two hours on her on volition, was repeatedly told she could leave, was permitted to use the restroom whenever she wanted, and was permitted to leave at the end of the interview), 
and Garcia
, 106 S.W.3d at 858-59 (holding defendant was not in custody when he went to police station and gave videotaped statement because, although probable cause existed, based on other factors a reasonable person in his position would not believe that he was not restrained to the degree associated with a formal arrest).

Accordingly, because the record supports the trial court’s determination that Fuller was not in “custody” when he made the statement that his fingerprints would be on the baggie, we affirm the trial court’s denial of his motion to suppress.  We overrule Fuller’s sole point. 

IV. Conclusion

Having overruled Fuller’s sole point on appeal, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: WALKER, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: January 3, 2008

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2: Fuller actually filed a motion in limine, but the trial court and the parties treated it as a motion to suppress; the parties likewise treat it as a motion to suppress in this appeal. 

3:
Fuller claims that he led the officers to the garage because they said that they would obtain a search warrant if necessary.