COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-382-CR

 

 

WILLIAM FULLER                                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction








In this appeal, Appellant William Fuller
challenges the trial court=s denial
of his motion to suppress.[2]  In a single point, Fuller contends that the
trial court erred by denying his motion to suppress and admitting the statement
he made to police officers that his fingerprints would be found on a plastic
baggie of methamphetamines; Fuller claims this statement was made during a
custodial interrogation and before police officers had read him his Miranda
rights.  We will affirm. 

II. Factual and
Procedural History

Officer Jeremy Chevallier and Sergeant Jack Adams
of the Carrollton Police Department were dispatched to 2805 Elk Grove Road in
Carrollton, Texas, in response to a report of a suspicious person in a maroon
Ford Taurus.  After locating the Taurus
at the address, the officers looked inside the car and noticed a marijuana pipe
in the passenger seat; they then walked to the front door of the residence in
an attempt to make contact with someone. 
Fuller answered the front door. 
Officer Chevallier asked Fuller if the marijuana pipe in the passenger
seat of the Taurus was his, and Fuller denied ownership of the pipe.  Fuller did, however, admit to smoking
marijuana and said that there was marijuana in the house.  Fuller led the officers to the garage and
retrieved a bag of marijuana from an area in the garage where a desk was
located.[3]  








Officer Chevallier took possession of the
marijuana, noticed pipes often used to smoke methamphetamines on the desk, and
asked whether there were any other drugs in the garage.  Fuller said that there were no other drugs
and consented to Officer Chevallier=s
request to search the garage.  While
searching the desk area from which Fuller had produced the marijuana, Officer
Chevallier discovered a bag containing what he thought were methamphetamines.

After Fuller twice denied ownership of the bag of
methamphetamines, he admitted that his fingerprints would be on the bag.  Fuller contends that Officer Chevallier was
holding up both the bag of marijuana and the bag of methamphetamines, and that
his statement regarded the bag of marijuana. 
Fuller then led Sergeant Adams to a bedroom where Fuller produced more
marijuana.  Officer Chevallier arrested
Fuller for possession of a controlled substance and the grand jury subsequently
indicted Fuller for intentionally or knowingly possessing a controlled
substance, namely methamphetamines.  








 Fuller
filed a pretrial motion challenging the admissibility of his statement that his
fingerprints would be on the bag of methamphetamines.  The trial court held a hearing on the
issue.  Although the trial court did not
make written findings of fact, at the end of the hearing the trial court stated
on the record that it found that the officers neither told Fuller that he could
leave nor told him he could not leave, that Fuller had the ability to move
about the house, and that a reasonable person in Fuller=s
position could not have believed his freedom was restrained to the degree
associated with an arrest. The trial court consequently denied the motion.  

The case proceeded to trial, and after hearing
all of the evidence a jury found Fuller guilty and assessed Fuller=s
punishment at two years in a state jail facility and a fine of 750
dollars.  The trial court suspended
Fuller=s
sentence and placed him on community supervision for five years.  This appeal followed. 

III.  Motion to Suppress

A. 
Standard of Review

We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  








The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.  State v. Ross, 32
S.W.3d 853, 855 (Tex. Crim. App. 2000); State v. Ballard, 987 S.W.2d
889, 891 (Tex. Crim. App. 1999). 
Therefore, we give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101,
108-09 (Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort
Worth 2004, pet. ref=d).  But when the trial court=s
rulings do not turn on the credibility and demeanor of the witnesses, we review
de novo a trial court=s rulings on mixed questions of
law and fact.  Estrada v. State,
154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at 652‑53.  Stated another way, when reviewing the trial
court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  State v. Kelly, 204 S.W.3d 808, 818
(Tex. Crim. App. 2006).

 When the
trial court makes explicit fact findings, we determine whether the evidence,
when viewed in the light most favorable to the trial court=s
ruling, supports those fact findings.  Id.
at 818-19.  We then review the trial
court=s legal
ruling de novo unless its explicit fact findings that are supported by the
record are also dispositive of the legal ruling.  Id. at 819.  

B. When Statements Made in Custody are
Inadmissible








The Supreme Court has established guidelines for
law enforcement agencies to follow during custodial interrogations. See Dickerson
v. United States, 530 U.S. 428, 439-40, 120 S. Ct. 2326, 2333-34 (2000)
(citing Miranda v. Arizona, 384 U.S. 436, 441-42, 86 S. Ct. 1602, 1611
(1966)).  These guidelines establish that
police must provide the suspect with the constitutionally required Miranda
warnings in order for any statements made by the suspect during the custodial
interrogation to be admissible. See Miranda, 384 U.S. at
444, 86 S. Ct. at 1612 . The Texas Code of Criminal Procedure has
codified these guidelines by mandating that no oral statement made by the
accused during a custodial interrogation may be admissible unless the accused
has been informed of his Miranda rights and has waived these
rights.  See Tex. Code Crim. Proc. Ann. art. 38.22, ' 3(a)(2)
(Vernon 2005). 








A person is in Acustody@ if a
reasonable person under the circumstances would believe that his freedom of
movement was restrained to the degree associated with a formal arrest.  Dowthitt v. State, 931 S.W.2d 244, 254
(Tex. Crim. App. 1996) (citing Stansbury v. California, 511 U.S. 318,
320B24, 114
S. Ct. 1526, 1528-30 (1994)).  The court
of criminal appeals has outlined four general situations constituting custody:
(1) when the suspect is physically deprived of his freedom of action in any
significant way, (2) when a law enforcement officer tells the suspect that he
cannot leave, (3) when law enforcement officers create a situation that would
lead a reasonable person to believe that his freedom of movement has been
significantly restricted, and (4) when there is probable cause to arrest
and law enforcement officers do not tell the suspect that he is free to
leave.  Dowthitt, 931 S.W.2d at
255 (citing  Shiflet v. State, 732
S.W.2d 622, 629 (Tex. Crim. App. 1985)). 

 Under the
fourth situation, at issue here, the officer=s
knowledge of probable cause must be manifested to the suspect.  Id.  Manifestation occurs Aif
information substantiating probable cause is related by the officers to the
suspect or by the suspect to the officers.@ Id.
(emphasis added).  Probable cause may be
manifested when a suspect admits committing a crime.  See id. at 254-57; see also Ruth v.
State, 645 S.W.2d 432, 436 (Tex. Crim. App. 1979) (suspect=s
admission of shooting the victim immediately focused investigation on him and
all subsequent interrogation was custodial); Garcia v. State, 106 S.W.3d
854, 858 (Tex. App.CHouston [1st Dist.] 2003, pet.
ref=d)
(recognizing that in Dowthitt probable cause was manifested by a suspect=s
admission of presence at the scene of the crime).  However, the manifestation of probable cause
does not automatically establish custody; custody attaches if the manifestation
of probable cause, combined with other circumstances, would lead a reasonable
person to believe that he is under restraint to the degree associated with an
arrest.  Dowthitt, 931 S.W.2d at
255; see Espinoza v. State, 185 S.W.3d 1, 4 (Tex. App.CSan
Antonio 2005, no pet.).  








C.  Custody
of Fuller

Fuller=s
situation falls under the fourth scenario presented by Dowthitt. See
931 S.W.3d at 25.  The officers had
probable cause to arrest Fuller for possession of marijuana, and neither of the
officers told Fuller he was free to leave. 
See Miller v. State 196 S.W.3d 256, 265 (Tex. App.CFort
Worth 2006, pet. ref=d).  Although the officers never specifically told
Fuller that probable cause existed, Fuller=s
admission of ownership of the marijuana did constitute manifestation of
probable cause.  See Espinoza, 185
S.W.3d at 4.  

But, this manifestation of probable cause alone
does not establish Acustody.@  Id. 
The question is whether this manifestation of probable cause, when
combined with other circumstances, would lead a reasonable person to believe
that he is under restraint to the degree associated with arrest.  See Dowthitt, 931 S.W.3d at 254.

In reviewing the facts on this issue, we are
mindful that we must view the evidence in the light most favorable to the trial
court=s
findings, and here the trial court made findings by dictating them into the
record at the conclusion of the hearing. 
See State v. Cullen, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006)
(authorizing same).  Specifically, the
trial court found:

 








After looking at Bradley versus State and Shiftlet versus State, the
test regarding whether or not the consensual detention becomes custody when
there is probable cause to arrest and law enforcement officers do not tell the
suspect that he is free to leave, it states that the officer=s knowledge of probable
cause must be manifested to the suspect. 
Further, that probable cause is a factor and does not automatically
establish custody.  Custody is
established if the manifestation of probable cause, combined with other
circumstances, would lead a reasonable person to believe that he or she is
under restraint to the degree associated with an arrest.  A person is considered in custody only if a
reasonable person would believe that his or her freedom of movement was
restrained to the degree associated with a formal arrest and the subjective
intent of the law enforcement officials to arrest is not relevant unless that
intent is communicated or otherwise manifested to the suspect.

Based on the facts in this case, I do not believe that the officer
told the defendant he was free to leave, but I also do not believe that he told
the officer - - that the officer told him he could not leave.  And based on all the movements throughout the
home that the defendant made, I do not believe a reasonable person would
believe that his freedom of movement was restrained to the degree associated
with a formal arrest.

So, therefore, I=m going
to deny the motion to suppress and allow the admission into evidence.








Officer Chevallier testified at the suppression
hearing that his interaction with Fuller was Ajust
conversation.@ 
He said Fuller was walking around his house, cooperating with
police.  He testified that prior to
asking Fuller the questions about the methamphetamines neither he nor his partner
had handcuffed Fuller, had displayed their weapons, or had made any show of
force at all.  Officer Chevallier
described the entire encounter as Avery
low-key@ and
explained, Awe didn=t make
him sit down or anything.@ 
He described Fuller as walking freely about the house.  Officer Chevallier testified that only about
five to ten minutes elapsed from when Fuller showed them the marijuana in the
desk until Officer Chevallier asked Fuller the question about his
fingerprints.  

Fuller=s
testimony was consistent with Officer Chevallier=s
testimony except that Fuller claimed when Officer Chevallier held up the bag of
methamphetamines he was also holding up the bag of marijuana; Fuller claimed
his statement that his fingerprints could be found on the bag was directed to
the bag of marijuana, not the bag of methamphetamines.

After reviewing the evidence presented concerning
the suppression issue in the light most favorable to the trial court=s
ruling, the evidence supports the trial court=s
findings.  Accord Kelly,
204 S.W.3d at 818-19.  And the trial
court=s legal
ruling is compelled by its explicit and implicit fact findings that are
supported by the record: that Fuller was freely walking about the house, that
the officers did not engage in any show of force, and that the duration of the
questioning after probable cause manifested was five to ten minutes.  See id. at 819.  













The record and the trial court=s
explicit findings compel the trial court=s
conclusion that despite the manifestation of probable cause that occurred when
Fuller admitted ownership of the baggie of marijuana, the combined
circumstances would not have led a reasonable person to believe that he was
under restraint to the degree associated with arrest.  Compare Dowthitt, 931 S.W.2d at 252-54
(holding that probable cause gave rise to custody when the defendant made an
incriminating statement after an hours-long interrogation session during which
he experienced a substantial period without food, his complaints of exhaustion
and requests to see his wife were ignored, and he was accompanied by
authorities on restroom breaks), and Ramirez v. State, 105 S.W.3d 730,
740 (Tex. App.CAustin 2003, no pet.) (holding
that probable cause gave rise to custody when the police officer arrived at the
defendant=s house in response to a
disturbance call, and, after a brief investigation, handcuffed the defendant=s hands
behind his back, patted him down, and said Ayou are
being detained@), with Espinoza, 185
S.W.3d at 4 (holding defendant was not in custody when she went to police
station and waited for two hours on her on volition, was repeatedly told she
could leave, was permitted to use the restroom whenever she wanted, and was
permitted to leave at the end of the interview), and Garcia, 106 S.W.3d
at 858‑59 (holding defendant was not in custody when he went to police
station and gave videotaped statement because, although probable cause existed,
based on other factors a reasonable person in his position would not believe
that he was not restrained to the degree associated with a formal arrest).

Accordingly, because the record supports the
trial court=s determination that Fuller was
not in Acustody@ when he
made the statement that his fingerprints would be on the baggie, we affirm the
trial court=s denial of his motion to
suppress.  We overrule Fuller=s sole
point. 

IV. Conclusion

Having overruled Fuller=s sole
point on appeal, we affirm the trial court=s
judgment.

 

PER CURIAM

PANEL F:    WALKER, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: January 3, 2008

 











[1]See Tex. R. App. P. 47.4.





[2] Fuller actually filed a
motion in limine, but the trial court and the parties treated it as a motion to
suppress; the parties likewise treat it as a motion to suppress in this appeal.






[3]Fuller claims that he led
the officers to the garage because they said that they would obtain a search
warrant if necessary.